The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Nance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of Conclusion of Law Number 1 and Award Number 5.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and by way of a Form 21 Agreement for Compensation for Disability approved by the Industrial Commission on 18 July 1991, as:
STIPULATIONS
1. The parties stipulated to two letters to Martha Barr dated April 7 and 17, 1992.
2. They also stipulated to the medical records of Dr. Marcus, Dr. dePerczel, Western North Carolina Rehabilitation Center, Catawba Memorial Hospital, Southern Rehabilitation Network, Gaston Neurosurgical Associates, Compleat Rehab Services, Dr. James Sanders, and First Health.
3. After the hearing the parties submitted stipulated medical records and the depositions of Dr. Stutesman and Dr. Habashi.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as a knitter when she injured her back on 21 May 1991 when she fell off a two to three foot step ladder. The knitting job involved heavy lifting up to 65 pounds.
2. Shortly after the injury plaintiff was referred to Dr. Sanders for an orthopaedic consult. Dr. Sanders diagnosed lumbosacral strain and referred plaintiff to physical therapy. When plaintiff failed to show any significant improvement, Dr. Sanders ordered an MRI scan, the results of which revealed a mild central bulging disc at L4-5 but no frank herniation. Dr. Sanders did not believe, however, that the bulging disc was causing plaintiff's discomfort, and advised her to start gradually increasing her activities as tolerated. A myelogram on 9 August 1991 revealed slight bulging at L4-5 and L5-S1. Because he was unable to identify the cause of her discomfort, Dr. Sanders referred plaintiff to Dr. Siva.
3. Dr. Siva saw plaintiff on 22 August 1991. EMG testing was normal and Dr. Siva determined that he had nothing to offer plaintiff. He felt plaintiff's discomfort outweighed all of the investigation to date.
4. On 9 December 1991 plaintiff came under the care of Dr. Stutesman at the Work Recovery Center, an outpatient rehabilitation facility. Dr. Stutesman diagnosed lumbar sprain and strain and symptom magnification. Plaintiff participated in the work hardening program from 6 January 1992 through 14 February 1992, during which time she exhibited a negative attitude and exaggerated symptoms with a goal of work avoidance. She was released to return to a creeler job which required lifting only up to six pounds. Dr. Stutesman had noted improvement in plaintiff's overall ability for endurance and strength over the four-week period. However, given plaintiff's noncompliance with medications, Dr. Stutesman did not feel further treatment would be of any benefit, and therefore she concluded plaintiff had reached maximum medical improvement with a five percent permanent partial disability to her back.
5. Plaintiff was able to work only a few days because of the pain. When she returned to work as a creeler, Martha Smith, the plant nurse, told plaintiff if she was still having problems she should return to Dr. Sanders or Dr. Stutesman. Plaintiff did not ask defendants for authorization to see another doctor.
6. On 4 March 1992 plaintiff was seen by Dr. dePerczel for complaints of severe pain in the back with radiation into the legs with numbness and weakness. On exam spasm was noted across the low back with marked limitation of back motion. Dr. dePerczel recommended plaintiff remain out of work and prescribed Medrol Dosepak. Plaintiff was referred to Dr. Marcus for nerve conduction velocity studies and EMG testing, the results of which were within normal limits. An exercise program and vocational rehabilitation for a job which did not stretch her back so much was recommended. Myelogram and CT-Scan on 13 March 1992 were normal.
7. Plaintiff couldn't tolerate the ride to Hickory to see Dr. dePerczel, so she switched on her own to Dr. Habashi, an orthopaedic surgeon in Lincolnton. Dr. Habashi diagnosed lumbar strain and inflamed sciatic nerve. Plaintiff was in constant pain and could not sit or stand for prolonged periods. Dr. Habashi saw plaintiff again on September 24, October 19, November 4, November 20 and December 7, 1992, during which time he prescribed various medications and advised her to remain out of work. Dr. Habashi has diagnosed bulging disc at L3-4, L4-5 and L5-S1 and he believes plaintiff will benefit from a discogram and surgery, which plaintiff has consented to given her level of pain.
8. Plaintiff requested authorization for treatment from the Industrial Commission in April 1992, within a reasonable time.
9. The treatment rendered plaintiff by Doctors Habashi, Marcus and dePerczel, and the treatment recommended by Dr. Habashi, were for a condition related to the injury of 29 May 1991 and was reasonable and necessary to effect a cure and give relief.
10. As a result of the injury of 29 May 1991 plaintiff has been unable to earn the same wages she was earning at the time of the injury in the same or any other employment since 4 March 1992.
11. Dr. Stutesman did not say unequivocally that plaintiff had reached maximum medical improvement in February 1992. Instead, the undersigned interpreted her opinion to be that if plaintiff was not going to be compliant with medications prescribed for her, then she would have to be considered to have reached maximum medical improvement.
12. Counsel for defendants did not elicit any testimony from Dr. Habashi or any other doctor which would contradict Dr. Habashi's opinions regarding plaintiff's ability to work after she was released by Dr. Stutesman.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury of 29 May 1991 plaintiff has been temporarily and totally disabled since 4 March 1992 and is entitled to benefits under G.S. § 97-29 to continue during her treatment by Dr. Habashi until she returns to work at the same or greater average weekly wage, or until further order of the Commission.
2. Defendants shall be responsible for paying the expenses plaintiff incurred or will incur for treatment by Dr. Marcus, Dr. dePerczel and Dr. Habashi, inasmuch as plaintiff requested authorization of the Industrial Commission within a reasonable time and that treatment is causally related to the injury and is reasonable and necessary to effect a cure or give relief. G.S. § 97-25.
* * * * * * * * * * * * * *
Based upon the findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $208.33 per week beginning 4 March 1992 and to continue until further order of the Industrial Commission. That compensation which has accrued shall be paid to plaintiff in a lump sum, subject to an attorney fee to be approved.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of the involved injury, including treatment by Dr. Marcus, Dr. dePerczel and Dr. Habashi, when bills for the same have been submitted to and approved by the Industrial Commission.
3. Defendants shall pay the costs due this Commission.
4. Defendants shall pay an expert witness fee, if not already paid, in the amount of $275.00 to Dr. Stutesman and $250.00 to Dr. Habashi.
5. The law firm of Lovekin and Ingle, now withdrawn, has requested an attorney fee in this matter. Ms. Yount, since leaving Lovekin and Ingle, has continued to handle this case and has submitted a motion for an attorney's fee. A reasonable attorney's fee in the amount of $1,383.91 is approved for the law firm of Lovekin and Ingle for their period of representation from 29 May 1991 until Ms. Yount began as an attorney with Curt J. Vaught Associates and plaintiff signed a contract with that firm on 21 January 1993. A reasonable attorney's fee in the amount of one third or 33 and 1/3% is approved for the law firm of Curt J. Vaught Associates beginning 21 January 1993 and continuing throughout the period of their representation.
In order to distribute such fees, the law firm of Lovekin and Ingle shall receive its portion in the amount of $1,383.91 from the amount of compensation accrued. Further, the one-third fee due Curt Vaught and Associates shall be taken from the remaining portion of the accrued amount due plaintiff. Thereafter, Curt Vaught and Associates shall receive one third or 33 and 1/3% of the weekly compensation amount of $208.33 which may be accomplished by taking one third of each weekly check or one third of the monthly total as payment of their fee. The frequency of the attorney's fee installments, whether weekly or monthly, is a matter upon which the attorney and the carrier shall agree.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ J. RANDOLPH WARD COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER